UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MONISE KING,

    Plaintiff,

                                      Case No. 10-13623

v.

                                      HONORABLE DENISE PAGE HOOD

WILLIAM BEAUMONT HOSPITAL,

    Defendant.

                                               /

**<u>ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
and
NOTICE SETTING STATUS CONFERENCE DATE</u>**

**I.    BACKGROUND/FACTS**

On September 9, 2010, Plaintiff Monise King ("King") filed the instant suit against Defendant William Beaumont Hospital ("Beaumont") alleging three-counts: Race Discrimination based on Title VII, 42 U.S.C. § 2002 *et seq.* and Michigan's Elliott-Larsen Civil Rights Act, M.C.L. 37.2101 *et seq.* (Count I); Retaliation (Count II); and, Intentional Infliction of Emotional Distress (Count III). The Court entered an Order dismissing Count III on March 9, 2011. (Doc. No. 18)

King, an African-American, was hired by Beaumont in December 1999 and terminated in July 2009. (Comp., ¶ 7) She asserts that the termination under racially discriminatory and retaliatory circumstances. (*Id.*) King filed a claim before the Equal Employment Opportunity Commission ("EEOC") and a Notice of a Right to Sue was issued on June 17, 2010. (Comp., ¶ 9)

As a full-time employee in 1999, King began working for Beaumont as a Customer Service Coordination. (King Dep., p. 27) At the time of her termination, she was a Senior Customer Service Coordinator in Beaumont's Home Medical Equipment Department. (*Id.*) King initially reported to

two Caucasian managers, Audrey Kill ("Kill") and Barbara Serra ("Serra"). (Serra Dep., p. 11) In 2008, Serra's title was Operations Manager. (*Id.*) King's duties included providing medical devices to customers, such as braces, boots, and mastectomy products to customers, and some supervisory responsibilities. (King Dep., pp. 28-29) King worked at a second floor showroom in Beaumont's main hospital campus in Royal Oak, Michigan. (Serra Dep., pp. 12-13) King's performance evaluations indicate that over the years she has consistently met Beaumont's performance standards. (Ex. 4, Plaintiffs' Br.)

The incident that precipitated King's termination involved a Caucasian exempt employee of Beaumont, Judith Fennessey, a Cashiering Manager supervising over 40 employees. Fennessey came into the showroom on May 29, 2009 with a prescription for an aircast for her son. King informed Fennessey that her son needed to come in himself to be fitted for the device. (King Dep., pp. 33-34) Fennessey came back on June 2, 2009 at which time King reviewed the prescription which did not indicate a specific type of air cast device, such as boot, brace, or splint. (King Dep., p. 34) Fennessey called the physician's office to get the physician's name and other information. (King Dep., pp. 41-43) King also called the physician's office several times but could not get an answer. (King Dep., p. 44) Fennessey asked King to insert the word "boot" on the prescription but King informed Fennessey that King could not do so. (King Dep., p. 44) Fennessey left and later came back with a complete prescription with the word "boot" inserted. (King Dep., pp. 44-45) King filled the prescription, but had Fennessey sign a waiver in the event the prescription did not fit. (King Dep., pp. 45-46) Fennessey admitted that she wrote on the prescription and inserted the word "boot" at King's instruction. (Fennessey Dep., pp. 15-16) King denies that she instructed Fennessey to alter the prescription. (King Dep., p. 44) Fennessey presented the boot at the

physician's office on June 3, 2009 and was told that it was the wrong device. (Fennessey Dep., p. 23) She became angry and lodged a complaint against King. (Fennessey Dep., pp. 23-24)

On the late afternoon of June 3, 2009, King's supervisor, Serra, received a second prescription by a different doctor with the same aircast prescription for Fennessey's son. (Ex. 8, Plaintiff's Br.) Serra attempted to contact the physician's office but could not get confirmation of the type of aircast prescription before the physician's office closed. (Serra Dep., pp. 24-26) Without a confirmation, Serra delegated another employee to deliver and fit an aircast stirrup brace to Fennessey's son. The employee, called a "Bracer," delivered and fitted the device at 8:00 p.m. on June 3, 2009. At that time, the Bracer provided a prescription containing the word aircast only. (Ex. 10, Plaintiff's Br.) Even though the prescription did not contain a specific aircast, the Bracer gave the patient the brace. (Serra Dep., pp. 24-26) Serra did not obtain the specific aircast device until June 4, 2009. (Serra Dep., pp. 24-26)

King was suspended for one day on June 12, 2009 for falsification of records, altering a medical prescription. (Ex. 11, Plaintiff's Br.) King grieved the suspension. During the grievance process, King inquired as to why Fennessey, an employee of Beaumont, was not disciplined for altering the prescription. King also lodged a complaint on July 16, 2009 against her supervisor, Serra for Serra's treatment of King regarding the incident. (Ex. 16, Plaintiff's Br.) King was disciplined a second time on this same date, July 16, 2009, for improper conduct because of becoming upset at her supervisor. (Exs. 17 & 19, Plaintiff's Br.) Because King now had two disciplinary actions within an eighteen month period, King was terminated on July 28, 2009. (Ex. 17, Plaintiff's Br.) Prior to her termination, King filed an EEOC complaint on July 20, 2009. (Ex. 18, Plaintiff's Br.) King filed a retaliatory discharge claim with the EEOC on August 5, 2009. (Ex.

3

19, Plaintiff's Br.) The Grievance Council did not render its final decision upholding the suspension until August 17, 2009, after King was terminated on July 28, 2009. (Ex. 13, Plaintiff's Br.)

This matter is now before the Court on Beaumont's Motion for Summary Judgment. A response and reply have been filed and a hearing held on the matter.

## II.   ANALYSIS

### A.   Standard of Review

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*,

477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

   **B.**  **Prima Facie Case of Race Discrimination**

     **1.**  ***McDonnell Douglas* Burden Shifting Approach**

   Beaumont claims that King is unable to show a *prima facie* case of race discrimination because neither Fennessey nor Serra are similarly situated employees. King responds that Fennessey is a comparable in that she is an employee of Beaumont who altered the prescription and was not disciplined. Serra is also a comparable because she dispensed a device without obtaining confirmation of the specific type of device. Both of these allegations were the basis of King's initial suspension.

   Racial discrimination claims under both Title VII and the Michigan Elliott-Larsen Civil Rights Act are analyzed under the burden shifting approach developed for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972). *Newman v. Federal Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001); *Allen v. Comprehensive Health*, 222 Mich. App. 426, 429 (1997). A plaintiff must establish a *prima facie* case and creates a presumption of discrimination by a preponderance of the evidence: (1) that he/she belongs to a protected class; (2) that he/she was subjected to an adverse employment action; (3) that he/she was qualified for the job; and (4) that he/she was treated differently from similarly situated employees from a non–protected class. *McDonnell Douglas*, 411 U.S. at 802; *Talley v. Bravo Pitino Restaurant*, 61 F.3d 1241, 1246 (6th Cir. 1995); and *Wilcoxon v. Minnesota Mining & Mfg. Co.*, 235 Mich. App. 347, 361 (1999).

Alternatively, a plaintiff could establish a *prima facie* case by presenting credible, direct evidence of discriminatory intent.[1] *Terbovitz v. Fiscal Court of Adair County*, 825 F.2d 111 (6th Cir. 1987).

If a plaintiff proves a *prima facie* case, the burden of persuasion shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment decision. *McDonnell Douglas*, 411 U.S. at 802. Once the employer carries this burden, the burden then shifts back to plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *Id.*; *Ang v. Proctor & Gamble Co.*, 932 F.2d 540, 548 (6th Cir. 1991). The plaintiff may meet this burden by showing: 1) that the stated reasons had no basis in fact, 2) that the stated reasons were not the actual reasons, or 3) that the stated reasons were insufficient to explain the employer's action. *Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1162 (6th Cir. 1991). The burden of persuasion always remains, however, with the plaintiff. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

### 2. Similarly Situated

Beaumont moves for summary judgment based on its contention that King is unable to show that she was treated differently from similarly situated employees from a non–protected class. *McDonnell Douglas*, 411 U.S. at 802. King responds that she is provided sufficient genuine issues of material facts on this factor for the Court to deny Beaumont's motion.

Based on the evidence submitted by the parties, it appears that King meets the first three factors to establish a *prima facie* racial discrimination claim: 1) King, an African American, is a member of a protected group; 2) King was subject to an adverse employment action when she was

---

[1] King does not assert or argue a direct evidence claim of racial discrimination.

suspended and eventually terminated in July 2009; and, 3) King was qualified for her position at the time of her suspension and termination, given her experience and performance evaluations. *Id.*

Beaumont claims that Fennessey is not a comparable because she does not work in the same department as King and is not under the same supervisor as King. King argues that Fennessey is a similarly situated employee in that she is employed by Beaumont and is subject to the same conduct code as King. Fennessey's conduct was evaluated by the same Human Resources Department, legal department and Grievance Council.

In reply, Beaumont argues that there is a distinction between the two. Fennessey was acting as a customer or patient, not as an employee when the incident occurred. Beaumont has the right to draw such a distinction between an employee and off-duty conduct of an employee. Beaumont argues that King has not shown that Fennessey is a comparable to King in this instance.

As to Serra, King argues that she is also a comparable in that she actually dispensed a device before receiving confirmation from the physician. Serra worked in the same department as King, even though she was supervisor. King asserts that both she and Serra ultimately reported to the same upper level managers, Michael Bartz and Deb LaRue. King claims she has sufficiently created a genuine issue of material fact that Serra is a comparable.

Beaumont argues that Serra is not a comparable in that Serra is King's supervisor and Serra did not engage in the same conduct as King. Serra knew that the patient did not need an aircast boot but rather a bracer. Serra dispatched the bracer to the patient's home and Serra followed up with the physician the next day to make sure the patient received the proper device.

The Court finds Fennessey and Serra are not comparables to King. Fennessey was not acting in her capacity as an employee, but rather as a customer or patient. Serra is not a comparable since

7

she is King's supervisor and Serra did not engage in the same conduct as King. King's race discrimination claim must be dismissed for failure to establish a *prima facie* racial discrimination claim under the *McDonnell Douglas* burden shifting factors.

### C.      Retaliation

The elements of a *prima facie* case of under Title VII and the Elliott Larsen retaliation claims are the same: 1) that plaintiff engaged in an activity protected by Title VII or Elliott Larsen; 2) that the defendant knew of this exercise of plaintiff's protected rights; 3) that defendant consequently took an employment action adverse to plaintiff; and 4) that there is a causal connection between the protected activity and the adverse employment action. *Balmer v. HCA, Inc.,* 423 F.3d 606, 613-14 (6th Cir. 2005); *Abbott v. Crown Motor Co., Inc.,* 348 F.3d 537, 542 (6th Cir. 2003).

King has met the first element in that she filed a complaint before the EEOC and also a grievance as to her first suspension. King also meets the second element in that Michael Dixon and Ebonnye Graham knew of the complaint in that King emailed the complaint to these two individuals. (Ex. 16, Plaintiff's Br.) Dixon admits that he shared this information before the Grievance Council. (Dixon Dep., pp. 42-43) Beaumont terminated King, meeting the third element of adverse action against King. As to the causal connection between the protected activity and the adverse employment action, there remains a genuine issue of material fact. Dixon testified that during the grievance hearing there was discussion of King's allegations of race discrimination. (Dixon Dep., p. 29) Temporal proximity can establish a causal connection between the protected activity and the adverse action in the retaliation context. *DiCarlo v. Potter,* 358 F.3d 408, 421 (6th Cir. 2004). There remains a genuine issue of material fact as to King's retaliation claim.

### III.    CONCLUSION

8

For the reasons set forth above,

IT IS ORDERED that Defendant William Beaumont Hospital's Motion for Summary Judgment **(Doc. No. 23, filed 7/25/2011)** is GRANTED IN PART and DENIED IN PART. The race discrimination claim in Count I is DISMISSED. The retaliation claim in Count III remains.

IT IS FURTHER ORDERED that a Status Conference is set for **April 30, 2012, 2:15 p.m.** The parties must be prepared to discuss any remaining discovery matter. The Court will set a Final Pretrial Conference and Trial Dates at the conference.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: March 19, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 19, 2012, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager